**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

E.V. DOE, by Next Friend N.C. DOE;
J.P. DOE, by Next Friend J.A.P. DOE;
E.R. DOE, by Next Friend J.R. DOE;          Docket No.
J.B. DOE, by Next Friend M.B. DOE; and      Judge
J.M. DOE, by Next Friend, H.M. DOE,

        Plaintiffs,

v.

SHIRLEY THOEN, an Individual, and
PORT HURON AREA SCHOOL DISTRICT

        Defendants.

_____/

James B. Rasor (P43476)
Attorney for Plaintiffs
**THE RASOR LAW FIRM, PLLC**
201 E. Fourth Street
Royal Oak, Michigan 48067-3846
PH:   (248) 543-9000
FAX: (248) 543-9050
jbr@rasorlawfirm.com

_____/

*(vertical text, left margin:)* RASOR LAW FIRM, PLLC

## **COMPLAINT AND DEMAND FOR TRIAL**

    **NOW COME** Plaintiffs, E.V. DOE, by Next Friend, N.C. DOE, J.P.

DOE, by Next Friend, J.A.P. DOE, E.R. DOE, by Next Friend, J.R. DOE,

J.B. DOE, by Next Friend, M.B. DOE, and J.M. DOE, by Next Friend, H.M.

DOE, by and through their counsel, THE RASOR LAW FIRM, PLLC, and complains of the Defendants as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff N.C. DOE is a resident of Fort Gratiot, St. Clair County, Michigan.  She brings this action as Next Friend for her son, E.V. DOE.

2.      Plaintiff E.V. DOE is a minor child and resident of Fort Gratiot, St. Clair County, Michigan.

3.      Plaintiff J.A.P. DOE is a resident of Fort Gratiot, St. Clair County, Michigan.  He brings this action as NEXT FRIEND for his son, J.P. DOE.

4.      Plaintiff J.P. DOE is a minor child and resident of For Gratiot, St. Clair County, Michigan.

5.      Plaintiff J.R. DOE is a resident of Clyde Township, St. Clair County, Michigan. She brings this action as NEXT FRIEND for her son, E.R. DOE.

6.      Plaintiff E.R. DOE is a minor child and resident of Clyde Township, St. Clair County, Michigan.

7.      Plaintiff M.B. DOE is a resident of Port Huron, St. Clair County, Michigan.  She brings this action as Next Friend for her son, J.B. DOE.

2

8.    Plaintiff J.B. DOE is a minor child and resident of Port Huron, St. Clair County, Michigan.

9.    Plaintiff H.M. DOE is a resident of Port Huron, St. Clair County, Michigan.  She brings this action as Next Friend for her son, J.M. DOE.

10.    Plaintiff J.M. DOE is a minor child and resident of Port Huron, St. Clair County, Michigan.

11.    Plaintiffs join in their claims against Defendants pursuant to Fed. R. Civ. P. 20(a).

12.    Upon information and belief, Defendant SHIRLEY THOEN (hereinafter THOEN) is, and has been at all times relevant, a resident of St. Clair County, Michigan.

13.    Defendant Port Huron Area School District (PHASD) is a public school district in St. Clair County, Michigan.

14.    At all times relevant to this Complaint, Defendant THOEN was a teacher employed by the Defendant PHASD.  All actions alleged herein by Defendant THOEN were taken under color of law and in the course and scope of her employment with Defendant PHASD.

RASOR LAW FIRM, PLLC

3

15.    The Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §1331 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

16.    At all relevant times set forth herein, Defendants acted in concert as an agent of one another.

17.    The amount in controversy exceeds $75,000.00, exclusive of costs, interest, and attorney fees, and jurisdiction is otherwise proper in this Court.

18.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the causes of action alleged arose entirely within this District.

## COMMON ALLEGATIONS

19.    Plaintiffs incorporate each and every preceding paragraph as though more fully restated herein.

20.    At all relevant times, each Defendant, in their dealings with the Plaintiffs, acted under the color of state and federal law.

21.    Under the substantive component of the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States, Plaintiffs had the right to, and a liberty interest in, personal security and bodily integrity, which right and liberty interest includes the right to be free from abuse at the hands of a public school employee.

4

22.    Plaintiffs' rights to and liberty interest in personal security and bodily integrity were clearly established at the times of the events complained of and these rights and liberty interests were, or should have been, well known by the Defendants.

23.    Under the procedural component of the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States, Plaintiffs had a property right to a free, appropriate, and least restrictive educational opportunity, which right and property interest includes the right to be free from abuse at the hands of a public school employee.

24.    Plaintiffs' rights to and property interest in a free, appropriate, and least restrictive educational opportunity were clearly established at the times of the events complained of, and these rights and property interests were well known by the Defendants.

25.    Minor Plaintiffs E.V. DOE, J.P. DOE, E.R. DOE, J.B. DOE and J.M. DOE each suffer from mental disabilities which rendered them especially susceptible to abuse at the hands of adults.

26.    Minor Plaintiff E.V. DOE was born on July 13, 2010, and at all relevant times was a student in the Defendant PHASD.  Next Friend N.C. DOE is his mother.

5

27.   Minor Plaintiff J.P. DOE was born on June 23, 2011, and at all relevant times was a student in the Defendant PHASD.  Next Friend J.A.P. DOE is his father.

28.   Minor Plaintiff E.R. DOE was born on May 26, 2011, and at all relevant times was a student in the Defendant PHASD.  Next Friend J.R. DOE is his mother.

29.   Minor Plaintiff J.B. DOE was born on July 19, 2011, and at all relevant times was a student in the Defendant PHASD.  Next Friend M.B. DOE is his mother.

30.   Minor Plaintiff J.M. DOE was born on January 1, 2012, and at all relevant times was a student in the Defendant PHASD.  Next Friend H.M. DOE is his mother.

31.   Defendant THOEN was the head teacher in the Early Childhood Special Education in the Defendant PHASD.

32.   Plaintiff E.V. DOE has been diagnosed with autism spectrum disorder and sensory processing disorder.  Additionally, Plaintiff E.V. DOE has demonstrated traits that make effectively communicating difficult because of his inability to use non-verbal communication methods.  These conditions prevented, or made impossible, a communication of his concerns

to his parents, so that the parents could have successfully intervened and removed the child from a threat of harm.

33.    Because of these diagnoses, Plaintiff E.V. DOE was placed in special education classes when he started pre-kindergarten classes in the Defendant PHASD in the fall of 2014.

34.    Plaintiff E.V. DOE had an individual education plan (IEP) in place during the fall of 2014.

35.    At all relevant times Defendant THOEN was aware of Plaintiff E.V. DOE's limitations and special needs, including his IEP.

36.    Plaintiff J.P. DOE has been diagnosed with autism spectrum disorder and has demonstrated traits that make effectively communicating difficult because of his inability to use non-verbal communication methods.

37.    Because of these diagnoses, Plaintiff J.P. DOE was placed in special education classes when he started with Defendant PHASD in the fall of 2014.

38.    At all relevant times Defendant THOEN was aware of Plaintiff J.P. DOE's limitations and special needs.

39.    Plaintiff E.R DOE has been diagnosed with autism spectrum disorder and has demonstrated traits that make effectively communicating difficult.

7

40.    Because of these diagnoses, Plaintiff E.R. DOE was placed in special education classes when he started at Defendant PHASD in the fall of 2014.

41.    At all relevant times Defendant THOEN was aware of Plaintiff E.R. DOE's limitations and special needs.

42.    Plaintiff J.B. DOE has not been diagnosed with autism spectrum disorder, but is significantly developmentally behind children of his similar age, in that he has delayed learning, developmental delay disorder, and slowed speech.

43.    Because of these traits and diagnoses, Plaintiff J.B. DOE received special education services from the Defendant PHASD in 2014.

44.    At all relevant times Defendant THOEN was aware of Plaintiff J.B. DOE's limitations and special needs.

45.    Plaintiff J.M. DOE was only three years old at the time and had not been diagnosed with Autism Spectrum Disorder yet.  However, Plaintiff J.M. DOE has demonstrated traits that make effectively communicating difficult because of his inability to use non-verbal communication methods.

46.    Because of these traits, Plaintiff J.M. DOE received special education services from the Defendant PHASD in 2014.

8

47.     At all relevant times Defendant THOEN was aware of Plaintiff J.M. DOE's limitations and special needs.

48.     Some examples of the delayed non-verbal communication skills Plaintiffs suffered from include, but are not limited to: making eye-to-eye contact, their body postures, and making gestures during social interaction.

49.     These conditions and traits prevented, or made impossible, a communication of the children's concerns to their parents, so that the parents could have successfully intervened and removed the child from a threat of harm.

50.     Defendant THOEN began work with Defendant PHASD as a teacher in 1978.

51.     Throughout her 36-year long career with Defendant PHASD, Defendant THOEN transformed into an inappropriate, physically and verbally abusive teacher.

52.     This trait was known and/or should have been known to the Defendant PHASD, which demonstrated their knowledge by systematically recording complaints of misconduct and abuse by Defendant THOEN.

53.     Despite the knowledge of abuse by the Defendant THOEN, Defendant PHASD refused to intervene or act to protect the students in their classroom, including the Plaintiffs, subjecting them to further harm.

9

54.    Defendant PHASD officials turned a blind eye to Defendant THOEN's conduct until forced to take action when her physical abuse was caught on hidden camera by the St. Clair County Sheriff's Department.

55.    Students in Defendant THOEN's Early Childhood Special Education class were placed in this least restrictive environment according to their individual education plans and may have required services for some or any of the following:

a.    Autistic Spectrum Disorder (ASD);

b.    Otherwise Health Impaired (OHI);

c.    Early Childhood Developmental Delayed (ECDD);

d.    Speech and Language Impaired (SLI);

e.    Deaf and Hard of Hearing (DHH);

f.    Visually Impaired (VI);

g.    Emotionally Impaired (EI);

h.    Severely Multiply Impaired (SXI);

i.    Severely Mentally Impaired (SMI);

j.    Mild Cognitive Impairment (MICI);

k.    Moderate Cognitive Impairment (MOCI);

l.    Traumatic Brain Injury (TBI);

10

m.    Physical Impairment (PI); and

n.    Learning Disabled (LD);

56.    According to Defendant PHASD, the Early Childhood Special Education programs "adopts the philosophy that every child is unique with an individual pattern of growth and development.   The program goal, curriculum, and materials are developmentally appropriate and geared to differing abilities.   The program provides a safe and nurturing environment, which promotes and integrates the physical, cognitive, social, emotional, communication, and self-help areas of development through classroom activities."[11]

57.    Defendant THOEN was assigned to teach some type of special education course throughout her entire tenure with Defendant PHASD.

58.    Despite her long career, completion of crisis prevention institute (CPI) training, and admonishments from PHASD and police officials, in the fall of 2015, Defendant THOEN regularly mistreated and abused the young children with special needs that she was trusted to teach and care for.

59.    Defendant THOEN's special education classes had two sessions – one in the morning and one in the afternoon.

---

[11] http://www.phasd.us/district/departments/special education and early childhood services/early childhood/early childhood program/ (Accessed August 8, 2016)

60.    Each session had approximately 7-8 students, ranging in age from four to six years old.

61.    A number of the students in this class, including all of the minor Plaintiffs here, have limited verbal skills or are non-verbal and unable to communicate with their parents or anyone else about the abuse they have endured at the hands of Defendant THOEN.

62.    In addition to Defendant THOEN, the classroom was normally staffed by two paraprofessional aides as well as occasional occupational therapists.

63.    At a minimum, students in the PHASD Early Childhood Special Education class need increased attention.    All students in the program required specialized services because of their young age and disabilities.

64.    During the 2013-2014 and 2014-2015 school years numerous paraprofessionals, who had staffed Defendant THOEN's classroom, reported to Thomas Edison Elementary and PHASD administration, and ultimately the St. Clair County Sheriff Department, that Defendant THOEN was abusive with the children in her class.

65.    Throughout this time frame, and likely beyond, Defendant THOEN was verbally abusive to paraprofessional staff, physically

12

and verbally abusive to her young students, and regularly exhibited erratic behavior.

66.     In September 2014, Defendant THOEN was first reported to the St. Clair County Sheriff Department for potential child abuse and assault.

67.     The report was due, in part, to employees of Defendant PHASD complaining to PHASD administration regarding Defendant THOEN's treatment of children in her classroom.

68.     The employees included Pamela Smith, who was a long time paraprofessional in Defendant THOEN's classroom.

69.     Throughout the 2013-2014 school year, Smith became increasingly concerned with Defendant THOEN's behavior towards children in her classroom.

70.     A few years earlier, Smith had reported similar concerns about Defendant THOEN to the principal at Indian Rivers Elementary School, a school within the Defendant PHASD, but no action was taken.

71.     When Smith received a negative evaluation from Defendant THOEN in retaliation for expressing her concerns in June 2014, she lodged a formal complaint about Defendant THOEN with her union and Defendant THOEN's supervisor on June 24, 2014.

13

72.    As a result of these complaints, Tracy Eschemburg, Defendant PHASD's Human Resources Administrator, filed a report with the St. Clair County Sheriff Department on September 16, 2014 – after summer break.

73.    No report was filed with Michigan Child Protective Services, as required by law, evidencing deliberate indifference by the Defendant PHASD and its employees for the safety and well-being of the children that was caused by the conduct of Defendant THOEN.

74.    Smith was removed from Defendant THOEN's classroom in the fall of 2014.

75.    Defendant PHASD paraprofessional, Robin O'Neil, was also assigned to Defendant THOEN's classroom during the 2013-2014 school year, throughout a two month period.

76.    Based on what she observed during that time, O'Neil reported concerns about Defendant THOEN's behavior to Defendant PHASD principal, as well as others in the administration.

77.    According to O'Neil, she observed Defendant THOEN disciplining children inappropriately by hitting and/or screaming at them.

14

78.    Specifically, O'Neil and Smith reported that Defendant THOEN inappropriately disciplined children by using a Rifton chair, screamed in children's ears and slapped children in the face.

79.    A Rifton chair is a specialty activity chair made for individuals with special needs to assist feeding, speech therapy, active learning and for individuals with sensory processing challenges.  Specifically, it is supposed to help position individuals to learn functional skills while actively participating in various tasks.

80.    Defendant THOEN was interviewed by the St. Clair County Sheriff Department on October 23, 2014.

81.    Defendant THOEN told the investigating detective that she was aware of complaints against her by paraprofessionals since the 2013 school year.

82.    Defendant THOEN also admitted to screaming in children's ears.

83.    Defendant THOEN additionally told the Detective that she thought it completely appropriate to direct students using her hands with physical force.

84.    Defendant THOEN reported that as a result of O'Neil's complaint, she had a meeting with her supervisor wherein she was given

15

verbal instructions not to use the Rifton chair and to attempt to resolve problems with children verbally rather than by using her hands.

85.     The St. Clair County Sheriff Department ultimately closed the incident report and investigation based on the timing of Smith's complaint and her receipt of a negative evaluation, finding there was insufficient information to proceed with a criminal complaint.

86.     Defendant THOEN was transferred by Defendant PHASD from Indian Woods Elementary School to Thomas Edison Elementary School at the beginning of the 2014-2015 school year.

87.     Defendant PHASD Paraprofessional Lisa Agosta was assigned to Defendant THOEN's classroom at the start of the 2014-2015 school year.

88.     Agosta became immediately concerned with how Defendant THOEN treated the children and reported those concerns to the Thomas Edison Elementary principal, Chris Collins.

89.     On the first day of the 2014-2015 school year, Defendant THOEN instructed Agosta to hold a boy against the wall, blocking him with her body to keep him from moving away.  The boy was screaming as this happened because, due to his disability, he had an aversion to being touched.

16

90.   After Agosta refused to follow Defendant THOEN's direction she went directly to the principal's office to report the incident.

91.   After a discussion with Agosta and another paraprofessional, Michelle Weber, Thomas Edison Elementary Principal Collins instructed the paraprofessionals to begin documenting their concerns in a journal.

92.   In just the first week of school, the paraprofessionals observed behavior including the following:

    a.   Defendant THOEN redistributing individual children's snacks to other class members despite parental instructions or food allergies as well as not giving children their appropriate food allotments at meal times;

    b.   Defendant THOEN dumping water in a non-verbal student's face in an attempt to make that student eat and drink;

    c.   Defendant THOEN grabbing a students' arms hard and/or tightly in an attempt to direct them;

    d.   Defendant THOEN lightly slapping a child's face in an attempt to quiet him;

    e.   Defendant THOEN attempting to kick children's feet out from under them when they are sitting on their feet.

17

93.    In addition to the paraprofessionals, bus drivers and aides observed Defendant THOEN being rough with students as they leave the bus to go to her classroom.

94.    Defendant THOEN was also regularly verbally abusive toward her paraprofessional staff.

95.    Agosta and Weber continued to make Principal Collins aware of the abuse special education children in Defendant THOEN's classroom were experiencing at the hands of their teacher.

96.    On September 25, 2015, Tracy Eschemburg again filed a report with the St. Clair County Sheriff Department regarding Defendant THOEN's behavior.

97.    The St. Clair County Sheriff Department began its investigation that day by interviewing both Agosta and Weber.

98.    Based on these incidents the St. Clair County Sheriff Department acquired a search warrant on October 1, 2015.

99.    Pursuant to the warrant, video and audio surveillance was installed by the St. Clair County Sheriff Department in four locations in Defendant THOEN's classroom on October 5, 2015.

18

**Relevant Factual Allegations for Plaintiff E.V. DOE**

100.  On September 8, 2015, Defendant THOEN instructed paraprofessional Agosta to pin Plaintiff E.V. DOE against the ground because he was not calming down.

101.  Upon doing this, Plaintiff E.V. DOE became hysterical, and started screaming, "let me go" and "leave me alone."

102.  Agosta, who worked as a paraprofessional for many years, had never seen teachers do something like this to a child to allegedly "restrain" them.

103.  Following the beginning of the school year in September 2015, Plaintiff E.V. suffered an increase and severity in tantrums and crying episodes.

104.  After these incidents, Plaintiff E.V. feared going to school, even to the extent that he would yell, "No teachers" when told he had to go.

105.  Because of his autism, Plaintiff E.V. cannot describe what or how he is feeling to either his parents or somebody who could have helped his situation.

**Relevant Factual Allegations for Plaintiff J.P. DOE**

106.  Plaintiff J.P. DOE arrived home from school on September 7, 2015 with a significant red mark on his hand.

19

107.   On or around early October, Plaintiff J.P. DOE arrived home and had a noticeable lump on his head that was not there when he had left for school in the morning.

108.   On one occasion Plaintiff J.P. DOE came home and his diaper had not been changed the entire day and he had rashes.

109.   Plaintiff J.P. DOE began seeing an Applied Behavioral Analysis (ABA) therapist, and in late October she went with him and observed Defendant THOEN in the classroom setting, and she was very upset and shocked about how Defendant THOEN treated the students.

110.   As a result of what Plaintiff J.P. DOE's ABA therapist told his mother, she kept him from school the rest of the week.

111.   Prior to beginning school, Plaintiff J.P. DOE had been a loving child, and used affection to express himself.

112.   But notes from Defendant THOEN were sent home to his mother that he was not using his words and that he was not engaging in the classroom.

113.   Plaintiff J.P. DOE became so distraught when he had to get on the bus to go to school, he would say he had "snakes in his tummy" and would challenge any reason to be on the bus.

20

**Relevant Factual Allegations for Plaintiff E.R. DOE**

114.   On September 8, 2015, Defendant THOEN pulled Plaintiff E.R. DOE out of the bathroom when his pants and underwear were still at his ankles.

115.   Defendant THOEN did this because the students' bathroom breaks had allegedly been taking too long that day.

116.   There was a similar incident where a bus driver, Colleen Diamond, observed Defendant THOEN pull another student up from his armpits and drag him onto the bus with his pants down at his ankles but his underwear on.

117.   On September 17, 2015, Defendant THOEN intentionally ran into Plaintiff E.R. DOE and knocked him down.

118.   This incident was observed by Paraprofessional Weber.

**Relevant Factual Allegations for Plaintiff J.B. DOE**

119.   On October 16, 2015, Defendant THOEN intentionally, unnecessarily, and forcibly stepped on Plaintiff J.B. DOE's hand.

120.   Defendant THOEN had a habit of stepping on children's fingers as discipline, for example if they lay their hand on the rug in the middle of the classroom.

21

121.   On one instance, because a student was fidgeting and not sitting where Defendant THOEN wanted him to sit, Defendant THOEN got angry and stepped on his fingers to get him to do what she wanted.

122.   On October 21, 2015, Defendant THOEN intentionally stepped on another student's fingers while he was seated on the activity floor.

123.   This incident was observed and recorded by hidden camera placed by the St. Clair County Sheriff Department.

124.   On or around the end of September, Plaintiff J.B. DOE arrived home from school and his mother noticed a bad bruise on his lower back and butt.

125.   Plaintiff J.B. DOE could not explain what happened and his mother naturally did not assume the worst.

126.   There had been a prior incident where Defendant THOEN dropped a student on the ground and kicked him in the head and neck area twice.  This incident was observed on the surveillance camera.

127.   Defendant THOEN was also observed on October 21, 2015 on the surveillance camera kneeing a student in the head after she had stepped on his fingers when he was on the ground.

22

128.   There was another instance where a parent called the school after her son arrived home with a red welt, and was told by Defendant THOEN that it probably happened on the bus.

129.   Michelle Weber, another paraprofessional who worked in the classroom, later told the Sheriff's Department that she believed the student had received the welt from Defendant THOEN when the two were alone in the class room because he had not had such a welt before.

130.   Before Plaintiff J.B. DOE began attending school at Thomas Edison, he had never had trouble going to school; in fact, he loved attending school.

131.   After the school year began, he would throw fits when it was time to go to school, even to the extent he would have to be carried on to the bus in the morning.

132.   Within two weeks of the school year beginning, Plaintiff J.B. DOE's bowel control and potty training completely regressed to the extent he had zero control of his bowels.

133.   When his parents asked him about his school, he could only talk about "the monster."

23

## Relevant Factual Allegations for Plaintiff J.M. DOE

134.   During the first week of school Defendant THOEN intentionally, forcibly, maliciously, and unnecessarily splashed water in Plaintiff J.M. DOE's face.

135.   Defendant THOEN did this in order to punish Plaintiff J.M. DOE because he had been playing in the water.

136.   On or around early to middle October, Plaintiff J.M. DOE was sitting outside of the bus area, and Defendant THOEN forcibly grabbed him by the back/neck portion of his coat and dragged him through the school yard.

137.   This was observed by the bus driver, Sandy Harvey, and Ms. Harvey saw one of the paraprofessionals take a picture of the incident because it was so unnecessary and violent.

138.   On or around late September, Plaintiff J.M. DOE came home with sore fingers, and told his mother that he had "boo boos" on his fingers.

139.   On or around October 18, Plaintiff J.M. DOE had a knot on his head, and the bus driver was told when Plaintiff J.M. DOE boarded that he had fallen at school and had a goose egg on his head.

140.   The 2015 school year was Plaintiff J.M. DOE's first year of school and he was not potty trained.

24

RASOR LAW FIRM, PLLC

141. Because he was not potty trained, Plaintiff J.M. DOE wore a diaper to school.

142. On one occasion in September, Plaintiff J.M. DOE arrived home from school and had a severe diaper rash with open sores because his diaper had not been changed.

143. Plaintiff J.M. DOE also came home from school on multiple instances wearing the same diaper he had worn to school.

144. When Plaintiff J.M. DOE was shown Defendant THOEN's picture, he said, "No. Bad. Go," and ran away.

## MORE COMMON ALLEGATIONS

145. At no time was there a pedagogical justification for Defendant THOEN's use of force toward these minor Plaintiffs.

146. Defendant THOEN's use of force was excessive and far more intrusive than necessary to meet any legitimate objective.

147. Defendant THOEN's use of force on these minor Plaintiffs was malicious and sadistic and had the sole purpose of causing harm to these minor Plaintiffs.

148. Based on the above incidents, among many others related to other children in her classes, Defendant THOEN was questioned by the St.

25

Clair County Sheriff Department in the office of Thomas Edison Elementary Principal Collins on October 30, 2015.

149.   During the interview Defendant THOEN reported aggression and frustration in her classroom but denied being too rough with children.

150.   That same day she was placed on administrative leave by Defendant PHASD.

151.   Parents of other students in Defendant THOEN's class reported that their children regularly refuse to go to school.

152.   A referral to State of Michigan CPS was also made on or around September 25, 2015, regarding Defendant THOEN's classroom behavior.

153.   On November 3, 2015, a detective with the St. Clair County Sheriff Department reported incidents to the State of Michigan Child Protective Services (CPS).

154.   On November 12, 2015, the St. Clair County Sheriff Department prepared a request to charge Defendant THOEN.

155.   On December 2, 2015, Defendant THOEN was charged with two counts of Assault or Assault and Battery by the St. Clair County Prosecutor's Office.

156.   On December 3, 2015, Defendant THOEN pled guilty to both counts.

26

157.   While Defendant THOEN had been placed on administrative leave from Defendant PHASD, upon information and belief Defendant THOEN was actually allowed to retire from Defendant PHASD and to retain her retirement benefits.

158.   As a result of Defendant THOEN's abuse, minor Plaintiffs E.V. DOE, J.P. DOE, E.R. DOE, J.B. DOE and J.M. DOE have experienced serious injuries to their physical, psychological, academic and emotional health and well-being.

### COUNT I:  42 U.S.C. § 1983 CIVIL RIGHTS CLAIM (AGAINST DEFENDANT THOEN)

159.   Plaintiffs incorporate each and every preceding paragraph as though more fully restated herein.

160.   At all times relevant to this action, Defendant THOEN was an employee of a public school district, was acting as a public school teacher, and was acting under the color of Michigan State law.

161.   Plaintiffs' constitutional rights to personal security and bodily integrity were clearly established and well-known to Defendant THOEN at the time of her physical assaults of Plaintiffs.

162.   Defendant THOEN's actions deprived Plaintiffs of their rights to personal security and bodily integrity, including their right to be free from

27

physical abuse at the hands of a public employee and Plaintiffs' substantive due process rights to a free, appropriate and least restrictive education possible in violation of Plaintiffs' clearly-established civil rights, in violation of 42 U.S.C. § 1983.

163.   Defendant THOEN's conduct was in violation of the criminal code of the State of Michigan, and in violation of the policies and procedures that either were in effect or should have been in effect and in force in the Port Huron Area School District.

164.   Defendant THOEN's actions were not taken in good faith, but were performed for the purpose of causing harm and/or punishment, without a legitimate governmental or pedagogical purpose.

165.   As a result of Defendant THOEN's physical abuse and misconduct, Plaintiffs have suffered severe physical, psychological, and emotional injuries, as well as serious impairment to their academic and social development.

166.   Defendant PHASD was aware and had notice of Defendant THOEN's abuse and unconstitutional behavior for more than a year before taking any action against Defendant THOEN.

167.   Defendant THOEN's abusive actions were not inflicted upon children who did not have disabilities; they were only inflicted upon

28

Plaintiffs and other disabled children.  Plaintiffs' rights to the equal protection of the laws, and to the rights and privileges afforded by the Constitution and laws of the United States were violated in contravention of 42 U.S.C. §1983.

**WHEREFORE,** Plaintiffs claim judgment of compensatory, punitive, and exemplary damages against Defendant in an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, together with costs, interest, and attorney fees so wrongfully incurred.

### COUNT II:  42 U.S.C. § 1983 CIVIL RIGHTS CLAIM
### (AGAINST DEFENDANT PHASD)

168.   Plaintiffs incorporate each and every preceding paragraph as though more fully stated herein.

169.   Defendant PHASD, with knowledge of Defendant THOEN's behavior, and in the face of multiple complaints by employees of the Defendant PHASD who actually witnessed misconduct, acted with deliberate indifference of both the supervision of Defendant THOEN and in their failure to protect the rights of the minor Plaintiffs herein, as well as all other students in Defendant THOEN's classroom.

170.   At all times relevant to this action, Defendant THOEN was an employee of a public school district, was acting as a public school teacher,

RASOR LAW FIRM, PLLC

29

and was acting under the color of state law, and as an agent of Defendant PHASD.

171.  Plaintiffs' constitutional rights to personal security and bodily integrity were clearly established and well-known to Defendant PHASD at the time of the physical assaults of Plaintiffs by Defendant THOEN.

172.  Defendant PHASD's actions deprived Plaintiffs of their rights to personal security and bodily integrity, including their right to be free from physical abuse at the hands of a public employee and the Plaintiffs substantive due process abuse at the hands of a public employee and the Plaintiffs substantive due process rights to a free, appropriate and least restrictive education possible.   Thus, Defendant PHASD violated the Plaintiffs' clearly-established civil rights, in violation of 42 U.S.C. § 1983.

173.  Defendant PHASD's agents' conduct was in violation of the criminal code of the State of Michigan, and in violation of the policies and procedures that either were in effect or should have been in effect and in force in the Port Huron Area School District, and Defendant PHASD acted in a manner that was deliberately indifferent to the rights of the Plaintiffs.

174.  Defendant PHASD's agents' actions were not taken in good faith, but were performed with knowledge of the harm being caused and with

reckless disregard of the rights of the Plaintiffs, and without a legitimate governmental or pedagogical purpose or excuse.

175.   As a result of Defendant PHASD's misconduct, minor Plaintiffs have suffered severe physical, psychological, and emotional injuries, as well as serious impairment to their academic and social development.

**WHEREFORE,** Plaintiffs claim judgment of compensatory, punitive, and exemplary damages against Defendant in an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, together with costs, interest, and attorney fees so wrongfully incurred.

## COUNT III:  VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, U.S.C. § 12132 (AGAINST DEFENDANT THOEN)

176.   Plaintiffs incorporate each and every preceding paragraph as though more fully restated herein.

177.   Under the Americans with Disabilities Act, 42 U.S.C. §12332 et seq., Plaintiffs are protected as persons with disabilities, and pursuant to 20 U.S.C. §1415, are entitled to bring a claim or cause of action under the provisions of the Act.

31

178.   Regulations set forth within 28 C.F.R. §35 have been adopted by the enforcing agencies for purposes of implementing and interpreting the Act's provisions.

179.   Defendant THOEN violated those provisions of the Americans with Disabilities Act, individually and as an agent of Defendant PHASD, and thereby causing Defendant PHASD to violate the Americans with Disabilities Act, by her actions and omissions including but not limited to the following:

a.   28 C.F.R. §35.130(a), which provides that "no qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity."

b.   28 C.F.R. §25.130(b)(I), which prohibits a public entity from "deny[ing] a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service [of the public entity.]"

c.   28 C.F.R. §35.130(b)(iii), which prohibits a public entity from providing a "qualified individual with a disability with an aid, benefit or service, to gain the same benefit, or to reach the same level of achievement as that provided to others."

d.   28 C.F.R. §35.130(b)(vii) which prohibits a public entity from "otherwise limit[ing] a qualified individual with a disability in the enjoyment of any

32

right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service."

e.   28 C.F.R. §35.130(b)(3)(I), by using "criteria or methods of administration" that have "the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability."

f.   28 C.F. R. §35.130(b)(3)(ii), by using "criteria or methods of administration that "have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities."

g.   28 C.F.R. §35.130(b)(8), which prohibits a public entity from "impose[ing] or apply[ing] eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity," based on criteria that are not necessary for the provision of the services, programs, or activities being offered.

180.   The Plaintiffs' disabilities and inability to effectively communicate motivated Defendant THOEN's abuse and treatment of the Plaintiffs.

33

181.   Plaintiffs are under the information and belief that there have not been any other reports of student abuse in the elementary school inflicted by non-special education teachers.

182.   The conduct of Defendant THOEN was and is a proximate cause of Plaintiffs' injuries including their emotional, psychological, and physical injuries, and the permanent and serious impairment of each Plaintiff's academic and social development.

**WHEREFORE**, each Plaintiff seeks judgment of compensatory, punitive, and exemplary damages against Defendant THOEN in an amount in excess of $75,000, along with costs, interest, and attorney's fee so wrongfully incurred.

### COUNT IV:  VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. §12132 (AGAINST DEFENDANT PHASD)

183.   Plaintiffs incorporate each and every preceding paragraph as though more fully restated herein.

184.   Under the Americans with Disabilities Act, 42 U.S.C. §12332 et seq., Plaintiffs are protected as persons with disabilities, and pursuant to 20

34

U.S.C. §1415, are entitled to bring a claim or cause of action under the provisions of the Act.

185.   Regulations set forth within 28 C.F.R. §35 have been adopted by the enforcing agencies for purposes of implementing and interpreting the Act's provisions.

186.   Defendant PHASD violated those provisions of the Americans with Disabilities Act, by its actions and omissions including but not limited to the following:

    a.    28 C.F.R. §35.130(a), which provides that "no qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity."

    b.    28 C.F.R. §25.130(b)(I), which prohibits a public entity from "deny[ing] a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service [of the public entity.]"

    c.    28 C.F.R. §35.130(b)(iii), which prohibits a public entity from providing a "qualified individual with a disability with an aid, benefit or service, to gain the same benefit, or to reach the same level of achievement as that provided to others."

RASOR LAW FIRM, PLLC

35

d.  28 C.F.R. §35.130(b)(vii) which prohibits a public entity from "otherwise limit[ing] a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service."

e.  28 C.F.R. §35.130(b)(3)(I), by using "criteria or methods of administration" that have "the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability."

f.  28 C.F. R. §35.130(b)(3)(ii), by using "criteria or methods of administration that "have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities."

g.  28 C.F.R. §35.130(b)(8), which prohibits a public entity from "impos[ing] or apply[ing] eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity," based on criteria that are not necessary for the provision of the services, programs, or activities being offered.

187.  Despite Defendant PHASD's actual and/or constructive knowledge of Defendant THOEN's abuse and discrimination, the Plaintiffs' disabilities, youth, and inability to effectively communicate motivated Defendant PHASD's acts or omissions.

36

188.   The conduct of Defendant PHASD was and is a proximate cause of Plaintiffs' injuries including their emotional, psychological, and physical injuries, and the permanent and serious impairment of each Plaintiff's academic and social development.

**WHEREFORE,** each Plaintiff seeks judgment of compensatory, punitive, and exemplary damages against Defendant THOEN in an amount in excess of $75,000, along with costs, interest, and attorney's fee so wrongfully incurred.

## COUNT V:  VIOLATION OF THE REHABILITATION ACT OF 1973, 29 U.S.C. § 794 (§ 504) (AGAINST DEFENDANT THOEN)

189.   Plaintiffs incorporate each and every preceding paragraph as though more fully restated herein.

190.   Plaintiffs are individuals with disabilities within the meaning of §504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (§504) and those regulations promulgated thereunder, 34 C.F.R. Part 104, which prohibit discrimination against persons with disabilities.

RASOR LAW FIRM, PLLC

37

191.   U.S.C. §504 prohibits the exclusion from the participation in, or being denied the benefits of, or being subjected to discrimination under any program or activity receiving Federal financial assistance.

192.   The practices and procedures endorsed and/or permitted by Defendant PHASD as described above and herein, including, but not limited to, Defendant THOEN's physical and emotional abuse of the Plaintiffs but not inflicted upon children without disabilities violate the prohibition against discrimination solely on the basis of disability.

193.   Defendant THOEN has violated Plaintiffs' rights under U.S.C. §504 and the regulations promulgated thereunder by denying Plaintiffs the benefits of receiving full and equal access to the public education programs and activities therein.

194.   The conduct of Defendant THOEN was and is a proximate cause of Plaintiffs' injuries, including their emotional, psychological, and physical injuries, and the permanent and serious impairment of each Plaintiff's academic and social development.

**WHEREFORE,** each Plaintiff seeks judgment of compensatory, punitive, and exemplary damages against Defendant THOEN in an amount in excess of $75,000, along with costs, interest, and attorney's fees so wrongfully incurred.

38

## COUNT VI:  VIOLATION OF THE REHABILITATION ACT OF 1973, 29 U.S.C. § 794 (§ 504) (AGAINST DEFENDANT PHASD)

195.   Plaintiffs incorporate each and every preceding paragraph as though more fully restated herein.

196.   Plaintiffs are individuals with disabilities within the meaning of U.S.C. §504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (§504) and those regulations promulgated thereunder, 34 C.F.R. Part 104, which prohibit discrimination against persons with disabilities.

197.   U.S.C. §504 prohibits the exclusion from the participation in, or being denied the benefits of, or being subjected to discrimination under any program or activity receiving Federal financial assistance.

198.   The practices and procedures endorsed and/or permitted by Defendant PHASD as described above and herein, including, but not limited to, Defendant THOEN's physical and emotional abuse of the Plaintiffs but not inflicted upon children without disabilities violate the prohibition against discrimination solely on the basis of disability.

199.   Defendant PHASD has violated Plaintiffs' rights under U.S.C. §504 and the regulations promulgated thereunder by denying Plaintiffs the

benefits of receiving full and equal access to the public education programs and activities therein.

200.   The conduct of Defendant PHASD was and is a proximate cause of Plaintiffs' injuries, including their emotional, psychological, and physical injuries, and the permanent and serious impairment of each Plaintiff's academic and social development.

**WHEREFORE** each Plaintiff seeks judgment of compensatory, punitive, and exemplary damages against Defendant THOEN in an amount in excess of $75,000, along with costs, interest, and attorney's fees so wrongfully incurred.

## COUNT VII:  MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT CLAIM
### (AGAINST THOEN AND PHASD)

201.   Plaintiffs incorporate each and every preceding paragraph as though more fully restated herein.

202.   Plaintiffs are, under Michigan law, including, without limitation under the Persons with Disabilities Civil Rights Act (M.C.L. §37.1101, *et*

*seq*), persons protected from acts of abuse and discrimination in educational institutions, by those in supervisory control over them, and protected against discrimination based upon disabilities.

203.   At all relevant times, Defendant THOEN had supervisory control over Plaintiffs as their teacher, and corresponding obligations not to engage in abusive conduct or discriminate against them because of their disabilities.

204.   At all relevant times, Defendant PHASD was an educational institution under the PWDCRA.

205.   At all times, relevant hereto, Defendant THOEN did, in fact, have supervisory control and corresponding obligations to the Plaintiffs in her role as a teacher.

206.   At all times, relevant hereto, Defendant THOEN used her supervisory position as a teacher to abuse and discriminate against Plaintiffs, while knowing that such conduct was illegal and improper.

207.   Absent her supervisory position over the minor, disabled Plaintiffs, Defendant THOEN would not have been in a position to, nor in fact would have been able to abuse Plaintiffs.

41

208.   Defendant PHASD had actual and/or constructive notice of Defendant THOEN's propensity to engage in such abusive, discriminatory behavior.

209.   Pursuant to Michigan law, Defendant THOEN's employer, Defendant PHASD, is liable for the actions and conduct of its employee.

210.   Plaintiffs are disabled pursuant to the PWDCRA.

211.   The Plaintiffs' disabilities and inability to effectively communicate motivated Defendant THOEN's abuse and treatment of the Plaintiffs.

212.   Despite Defendant PHASD's actual and/or constructive knowledge, the Plaintiffs disabilities, youth, and inability to effectively communicate motivated Defendant PHASD's actions or omissions.

213.   Plaintiffs are under the information and belief that there have not been any other reports of student abuse in the elementary school by non-special education teachers against non-special education students.

214.   Defendants' abuse and conduct toward minor, disabled Plaintiffs were intentional, discriminatory, and unwelcome.

215.   Plaintiffs were subjected to an intimidating, hostile, and offensive educational environment of Defendants' creation.

42

216.   Defendants explicitly or implicitly made Plaintiffs' submission to that conduct a term or condition of obtaining the full benefit of their school's educational opportunities or benefits.

217.   Defendants' discrimination resulted in denying Plaintiffs the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of an educational institution.

218.   As a result of Defendants' physical abuse, misconduct and discrimination, minor, disabled Plaintiffs have suffered severe physical, psychological, and emotional injuries, as well as serious impairment to their academic and social development.

**WHEREFORE,** each Plaintiff claims judgment of compensatory, punitive, and exemplary damages against Defendant in an amount that rightfully compensates Plaintiff together with costs, interest, and attorney fees so wrongfully incurred.

## COUNT VIII:  BATTERY (AGAINST THOEN)

219.   Plaintiffs reincorporate each and every preceding paragraph as though more fully restated herein.

220.   Defendants THOEN's conduct, as set forth above, constituted a willful and harmful or offensive touching of Plaintiffs.

43

RASOR LAW FIRM, PLLC

221.  Defendant THOEN intended the act which caused the willful and harmful or offensive touching of Plaintiffs.

222.  As a result of Defendant's conduct, minor Plaintiffs have suffered severe physical, psychological, and emotional injuries, as well as serious impairment to their academic and social development.

**WHEREFORE,** each Plaintiff claims judgment of compensatory, punitive, and exemplary damages against Defendant in an amount that rightfully compensates Plaintiff together with costs, interest, and attorney fees so wrongfully incurred.

## COUNT IX:  ASSAULT (AGAINST THOEN)

223.  Plaintiffs reincorporate each and every preceding paragraph as though more fully restated herein.

224.  Defendant THOEN's conduct, as set forth above, constituted an unlawful offer of corporal injury to Plaintiffs by the use of force.

225.  In the alternative, Defendant THOEN's conduct, as set forth above, constituted an exercise of force unlawfully directed toward Plaintiffs.

226.  The surrounding circumstances of that conduct created a well-founded apprehension in Plaintiffs of imminent contact.

44

227. The surrounding circumstances of that conduct created an apparent present ability for Defendant THOEN to accomplish that contact.

228. As a result of Defendant THOEN's conduct, Plaintiffs have suffered severe physical, psychological, and emotional injuries, as well as serious impairment to their academic and social development.

**WHEREFORE**, each Plaintiff claims judgment of compensatory, punitive, and exemplary damages against Defendant in an amount that rightfully compensates Plaintiff together with costs, interest, and attorney fees so wrongfully incurred.

## COUNT X:  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (AGAINST THOEN)

229. Plaintiffs incorporate each and every preceding paragraph as though more fully restated herein.

230. Defendant THOEN's conduct, as set forth above, was intentional or reckless, extreme, outrageous, and of such character as to be intolerable in a civilized society.

231. Defendant THOEN's conduct was for an ulterior motive or purpose, including but not limited to causing Plaintiffs to suffer severe emotional distress, including and/or to satisfy her own needs to act out in an

45

aggressive manner as a means of venting and relieving her own frustration regarding her students as well as her personal issues.

232. Defendant THOEN's conduct resulted in minor Plaintiffs suffering extreme emotional distress.

**WHEREFORE**, each Plaintiff claims judgment of compensatory, punitive, and exemplary damages against Defendant in an amount that rightfully compensates Plaintiff together with costs, interest, and attorney fees so wrongfully incurred.

## COUNT XI:  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (AGAINST PHASD)

233. Plaintiffs incorporate each and every preceding paragraph as though more fully restated herein.

234. Defendant PHASD's conduct, as set forth above, was intentional or reckless, extreme, outrageous, and of such character as to be intolerable in a civilized society.

235. Defendant PHASD's conduct was for an ulterior motive or purpose, including but not limited to causing Plaintiffs to suffer severe emotional distress.

46

236.  Defendant PHASD's conduct resulted in minor Plaintiffs suffering extreme emotional distress.

**WHEREFORE,** each Plaintiff claims judgment of compensatory, punitive, and exemplary damages against Defendant in an amount that rightfully compensates Plaintiff together with costs, interest, and attorney fees so wrongfully incurred.

### COUNT XII:  GROSS NEGLIGENCE AGAINST PHASD

237.  Plaintiffs incorporate each and every preceding paragraph as though more fully restated herein.

238.  As Plaintiffs' teacher, Defendant THOEN owed Plaintiffs a duty of reasonable care for their safety.

239.  Defendant PHASD knew or had reason to know that Defendant THOEN's physically abusive conduct, as set forth above, would result in Plaintiffs suffering severe emotional and psychological distress.

240.  Notwithstanding the foregoing, Defendant PHASD subjected Plaintiffs to physically and verbally abusive behavior, which was the proximate cause of the injuries and damages suffered by Plaintiffs as set forth above.

47

241.  Although Defendant THOEN was a governmental employee acting in the course and scope of his employment, Defendant PHASD are not entitled to governmental immunity for the reason that her conduct constitutes gross negligence as defined by Michigan law, in that:

      a.    Defendant had actual knowledge of the extreme risk of emotional and psychological harm to Plaintiffs as a result of her physical and verbal abuse; and,

      b.    Notwithstanding her awareness of this risk, Defendant engaged in the abusive conduct as set forth above;

      c.    Because Defendant THOEN had received similar complaints just a year earlier, the Plaintiffs injury was foreseeable and avoidable had Defendant PHASD not disregarded the severity;

242.  As a result of Defendant PHASD's conduct, Plaintiffs have suffered severe physical, psychological, and emotional injuries, as well as serious impairment to their academic and social development.

243.  The sole proximate cause to the injuries to the Plaintiffs was the conduct of multiple agents of Defendant PHASD.

**WHEREFORE,** each Plaintiff claims judgment of compensatory, punitive, and exemplary damages against Defendant in an amount that

48

rightfully compensates Plaintiff together with costs, interest, and attorney fees so wrongfully incurred.

Respectfully submitted,

*/s/ James B. Rasor*         .
James B. Rasor  (P43476)
Attorney for Plaintiffs
**THE RASOR LAW FIRM, PLLC**
201 East Fourth Street
Royal Oak, Michigan 48067
(248) 543-9000
Dated:  December 13, 2017        jbr@rasorlawfirm.com

## DEMAND FOR JURY TRIAL

**NOW COME** Plaintiffs, E.V. DOE, by Next Friend, N.C. DOE, J.P. DOE, by Next Friend, J.A.P. DOE, E.R. DOE, by Next Friend, J.R. DOE, J.B. DOE, by Next Friend, M.B. DOE, and J.M. DOE, by Next Friend, H.M. DOE, by and through their counsel, THE RASOR LAW FIRM, PLLC,  and hereby demands a trial by jury in the above-captioned cause of action.

Respectfully submitted:

/s/ James B. Rasor__ ___
James B. Rasor (P43476)
Attorney for Plaintiffs
**THE RASOR LAW FIRM, PLLC**
201 E. Fourth Street
Royal Oak, Michigan 48067-3846
(248) 544-9300/(248) 543-9050 Fax
jbr@rasorlawfirm.com
Dated: December 13, 2017

49

RASOR LAW FIRM, PLLC